FIELDER *vs.* VARNER et al.

45  429
133  347

[ACTION ON PROMISSORY NOTE.]

1. *Mortgage, securing several debts ; duty of mortgagee, on sale of property, as to application of proceeds.*—When several debts are secured by a mortgage, for some of which debts there are sureties who are not parties to the mortgage, the mortgagee becomes the trustee for the sureties to the amount of the funds thus provided for their indemnity ; and upon a sale of the mortgaged property, the mortgagee must see that their just proportion of the proceeds of the sale is applied to the discharge of the debt on which the sureties are bound,

2. *Same ; application of proceeds of sale.*—If such mortgagor is also the principal on the debt on which the sureties are bound, on a sale of the mortgaged property, the portion of the proceeds of such sale applicable to the debt on which the sureties are bound, will be credited as a payment *pro tanto* on the debt, and the sureties to that extent discharged.

3. *Usury, defense of ; who alone can take advantage of.*—A debtor may pay usurious interest on his debt, and he may convey his property for that purpose ; and he alone can avail himself of the defense of usury.

4. *Mortgage, sale of property under ; proceeds of, how must be distributed even where part of debts are for usurious interest.*—Where there is a mortgage for the security of several debts, some of which include amounts for usurious interest, and others only include amounts for legal interest, upon a sale of the mortgaged property, and an appropriation of the proceeds thereof, if there are no preferred debts, the funds must be appropriated without regard to the amount of the illegal interest, if the mortgagor assents to such appropriation, notwithstanding the fact that some of the debts secured by such mortgage, and for which debt there were sureties, would be paid in full if the amount of such illegal interest should be deducted from the debts secured by the mortgage.

APPEAL from Circuit Court of Bullock.
Tried before Hon. J. McCALEB WILEY.

THE facts of the case are stated in the opinion.

J. N. ARRINGTON, for appellant.—1. The note sued on is Fielder's individual property. The application of the proceeds of the sale of the mortgaged property, to the debts due the *firm* of Sessions & Fielder, *was made by the firm of Sessions & Fielder*, and Fielder, as an individual, is not

affected by the acts of the firm. In transactions of this character, the individual is disconnected from the firm of which he is a member, and is no more estopped by its acts than if he was not a member of the firm.—Parsons on Partnership, 171, 276.

2. Usury is a personal privilege. Sureties cannot make the defense of usury, unless there is usury *in the contract on which they are sued.* It being a personal privilege, *can be taken advantage of only by the parties to the usurious contract.*—*Cook & Kornegay v. Dyer,* 3 Ala. 643.

3. It is well settled that when a debtor, who owes two or more distinct debts, makes a general payment without directing the debt to which the payment shall be applied, the creditor has the right to appropriate the payment to either debt.—*Bobe's Heirs v. Stickney,* 36 Ala. 482 ; 1 Am. Lead. Cases, 286, 287.

4. That a creditor can apply a general payment to an usurious debt.—*Robinson, Adm'r, v. Allison,* 36 Ala. 525 ; *Treadwell v. Moore,* 34 Maine, 112 ; *Dorsey v. Weyman,* 6 Gill, 59 ; *Philpot v. Jones,* 2 Adolphus & Ellis, 41, p. 25 ; *Wright v. Laing,* 3 Barnewall & Cresswell, 165.

In *Philpot v. Jones,* the court held that the creditor may apply a general payment to even an *illegal* demand—*a demand originating in violation of the criminal laws.*

5. Even admitting that a creditor cannot apply a general payment to an usurious debt, in the absence of directions from the debtor, yet it cannot be contended that he may not do so by the consent of the debtor. The court below, in refusing the charge asked by the appellant, held that Sessions & Fielder could not apply the payment to their debt to the exclusion of the debt of Fielder, even with the consent of Scott & Sanders, who made the payments, and who were principals on the note on which the appellees are sureties.—*Cook v. Kornegay,* 3 Ala. 643.

6. The appellees had no interest in the mortgage, which they could assert *in a court of law.* Although a surety who pays the debt of his principal shall stand in the place of the creditor, and have all the rights which the creditor has, for the purpose of obtaining reimbursement, yet this is an equitable right, *which only a court of equity* can en-

force. But the surety can be subrogated to the rights of the creditor only by paying the debt.—*Dunlap v. Clements*, 7 Ala. 539 ; *Houston v. Branch Bank at Huntsville*, 25 Ala. 250 ; 1 Story Eq. Jur. (Redfield's Ed.) § 499*a, et seq.*, and § 638 ; *Wright v. Simpson*, 6 Vesey, 714 ; *Geddis v. Hawk*, 1 Watts, 289.

STONE, CLOPTON & CLANTON, *contra.*—1. The property turned over, all of it, had been previously conveyed to Fielder & Sessions, by mortgage executed by Scott & Sanders. That mortgage provides for and secures the debt here sued for, as well as the notes for advances, to which Fielder applied the money. When that mortgage was made, it inured to the benefit of the appellees in this case, although they were not named in the mortgage. *Steele v. Mealing*, 24 Ala. 285 ; *Phillips v. Thompson*, 2 John. 418 ; *Moses v. Murgatrayd*, 1 John. 119 ; *Wright v. Morley*, 11 Ves. 12, 22 ; *Ohio Life Ins. Co. v. Ledyard*, 8 Ala. 866 ; 1 Story Ev. § 6≀8 ; 23 Ala. 799 ; *Cullom v. Br. Bank ; Toulmin v. Hamilton*, 7 Ala. 367. From this principle, it results that even if all the parties to the mortgage—Fielder & Sessions and Scott & Sanders—had agreed to apply the entire proceeds to one class of the secured debts, to the exclusion of another, they could not have done so without the consent of these defendants. The most they could have claimed would have been, that the money should have been applied *pro rata* to all the debts provided for.

2. As soon as the money was realized by Fielder & Sessions from the mortgaged property, the law itself made the distribution among the different debts. To test this, let us suppose that the different demands had been owned by different persons ; that Fielder & Sessions were trustees, and as such sold the property and held the proceeds ; each of the creditors could have maintained an action at law for his share of the money ; for, in that case, Fielder & Sessions would have had in their possession money which, *ex equo et bono*, belonged to each creditor. The claim of each creditor would have been several; they would not have been bound to bring a joint suit, and hence actions at law would have lain.—*Loftin v. Lyon & Baker*, 22 Ala. 540 ; *Hitchcock v. Lukins*, 8 Por. 333 ; *Bezzel v. White*, 13 Ala. 422.

3. Our case is still better than this. The appellant has but two exceptions : One for a charge given, and one for a charge refused. To show error in either of the rulings, the appellant must establish the proposition that these defendants have no rights under the mortgage, although the debt sued on is one of the secured debts in the mortgage, and that Fielder & Sessions and Scott & Sanders, without our consent, could apply the whole security to another debt, and entirely exclude us and the debt we are sued for from all participation in the mortgage fund. It is not a question of applying funds to the payment of a usurious debt, in preference to a legal debt. The argument takes the extreme position, and cannot be maintained with an humbler pretension—that the mortgagors and a part of the beneficiaries, without the consent of the other beneficiaries, can apply the whole mortgage fund to our secured debt, and leave another secured debt wholly unpaid, and this uuder a mortgage which creates no preferences. Such an argument, when understood, falls of its own weight.

4. The plaintiff below—appellant here—took a non-suit on the charge of the court. He thus adhered to his determination to recover the whole fund or nothing. On all questions not excepted to, and not shown by the record, this court will presume the court below ruled correctly and satisfactorily.—Shep. Dig. 569, § 105 ; ib. 459, § 10. If the charge was too general, or needed explanation, or if the plaintiff desired a partial recovery on the theory that the two debts were entitled to share *pro rata*, he should have asked a charge to that effect, and should not have taken a non-suit.

5. The plaintiff had in his hands money which, *ex equo et bono*, he was bound to apply in total or partial payment of this note ; and this demonstrates that the circuit court did not err either in the charge given or in the charge refused.

6. No bill in chancery was necessary in this case ; no equities were to be settled. Fielder was in possession of all the money, and rightfully in possession of it. The only question was its rightful, *pro rata* apportionment among the several demands he held. This involved nothing but

a calculation. As well contend that a tenant in common, or other part owner, of a chattel—not a partner—can not maintain an action at law for his share of the proceeds of sale, or for his proportion of the damages for a conversion of the chattel.—*Parminter v. Kelly*, 18 Ala. 716 ; *Rutledge v. Townsend*, 38 Ala. 720.

7. Even if there had been no usury in the notes for advance, Fielder & Sessions, under the facts of this case, could not, with the consent of Scott & Sanders, without our consent, have applied the proceeds of the mortgage property to one debt for advances, to the exclusion of the debt in suit, which is equally provided for in the mortgage. The charge asked and refused, and the charge given, would prevent correct rulings of the court, (the phrase usurious or illegal interest being left out,) even if there had been no usury in the transaction.

PETERS, J.—On the fourth day of March, 1868, the appellant sued the appellees in the circuit court of Bullock county, by summons and complaint. The cause of action was a promissory note, in the following words, to-wit :

"$478 57.—On or before the 25th day of December next, we, or either of us, promise to pay James H. Fielder, or bearer, the sum of four hundred and seventy-eight dollars and fifty-seven cents, for value received, in gold or its equivalent. This the 3d day of January, 1866.

(Signed)      J. W. SCOTT,
              ISAAC SANDERS,
              K. M. VARNER, S. C.,
              THOMAS YOUNGBLOOD."

On the trial, the defendants pleaded the general issue, and payment, with leave to give in evidence any matter which might be specially pleaded. On these issues the plaintiff read the note above said to the jury in evidence, and rested. It was then shown by the defendants, Varner and Youngblood, who were the only parties defendant then before the court, that they were accommodation sureties on said note ; that said Scott & Sanders had executed a mortgage to Sessions & Fielder on the 23d of March, 1867, to secure its payment, with that of several

other debts named in said mortgage. This mortgage included a conveyance of all the property of said Scott & Sanders which was not exempt from execution, except what was mortgaged to other parties; the mortgage was executed to Sessions & Fielder, but the debt mentioned in the above note was one of those also mentioned in the mortgage, and secured by it; there was no preference allowed in favor of any of the debts secured in the mortgage; the property conveyed was all turned over to the mortgagees, and sold by them for the satisfaction and payment of the debts therein mentioned. It was also admitted that certain advances made by Fielder & Sessions to Scott & Sanders, mentioned in the mortgage, were, $1,000 at the date of the mortgage, $1,000 in April, 1867, and $1,000 in May, 1867; and that for these several advances notes were taken, all of which fell due on October 1, 1867. To the sums thus advanced, the gross sum of 25 per cent. was added to each note. It also appeared that the law day of the mortgage fell upon the first day of October, 1867. It was also shown that the mortgaged property sold for money enough to pay all the debts secured in the mortgage, except the usurious interest of 25 per cent. on the $3,000 mentioned as advances; and that, if the money realized on the sale of the property conveyed in the mortgage had been applied to the payment of all the debts secured in the mortgage, exclusive of the usurious interest, all would have been paid. And among the rest, the one here sued for. There was also testimony tending to show that Scott & Sanders, the mortgagors, consented to the appropriation of the moneys raised upon the mortgage to the payment of said usurious interest, to the exclusion of the debt in suit mentioned in said note.

Upon this evidence the said plaintiff below, the said Fielder, asked the court to charge the jury as follows, to-wit:

"If the jury believe from the evidence, that there was usurious interest in the notes given by Scott & Sanders to Sessions & Fielder for advances made to them, at the time of and subsequent to the execution of the mortgage, and that Scott & Sanders made a general payment, then

Sessions & Fielder had the right, with the consent of Scott & Sanders, to apply such general payments to the payment of such usurious interest, to the entire exclusion of the note sued upon, although said application may have been made without the knowledge or consent of the defendants."

This charge was refused, and the said plaintiff excepted. And the defendants below then asked the court to charge the jury that—

"If the jury believe from the evidence, that there was illegal interest included in the notes given by Scott & Sanders to Sessions & Fielder for advances made to them at the time of, and subsequent to the execution of, the mortgage, then Sessions & Fielder, in the absence of any appropriation by Scott & Sanders, could not apply a general payment made by Scott & Sanders to the payment of such illegal interest, to the entire exclusion of the note here sued upon, if said note is included in said mortgage, and the defendants are accommodation sureties on said note."

This charge the court gave, and the plaintiff excepted. And in consequence of these rulings of the court, the plaintiff took a non-suit, and now appeals to this court for the decision upon the points raised upon the foregoing charge and refusal.—Rev. Code, § 2759.

A mortgage is a security for all the debts included in it. 4 Kent, p. 136, marg. If these debts are in different rights, and the mortgage contains a power of sale, as is the case with this mortgage, then the mortgagee becomes the trustee of the creditors and of all those interested in the appropriation of the funds raised upon a sale of the mortgaged property. And as such trustee, he is bound to see that the funds made upon the mortgage sale are legally applied. And where there is no preference given to one creditor whose debt is so secured, over another, then all must share equally in the application of the moneys raised upon a sale of the mortgaged property.—*Steele v. Mealing*, 24 Ala. 285. Here, the mortgagors were the principal debtors, and Varner and Youngblood were their sureties on the note sued upon in this action. And the mortgage,

which the principal debtors executed, was for the indemnity of their sureties.   This placed the property conveyed beyond the control of the mortgagors or the mortgagees, so as to prejudice the rights of the sureties.   The mortgage was *pro tanto* for their benefit.   It was a deposit for their use.   In such a case, neither the creditor nor the principal debtor can defeat their rights.—1 Story Eq. § 499, and cases there cited.   If the creditor is supplied with the means to pay the debt by the principal debtor, it is the right of the surety to have the means thus supplied appropriated to his discharge, and if the creditor fails in making the proper appropriation, to that extent the creditor will be released.—*Perrine v. Fireman's Ins. Co. of Mobile*, 22 Ala. 575; *Allen v. Greene*, 19 Ala. 34.   And this release may be insisted on either at law or in equity.— *Henderson v. Elrod et al.*, Jan. T. 1871.

The mortgagor may himself pay usurious interest, and he may convey his property to secure its payment.   And he alone can avail himself of the defense of usury.   This is a personal privilege to him.   If he does not interpose it, no one else can, unless it is so exhorbitant as to induce the belief that the debt itself is simulated, and consequently fraudulent as to *bona fide* creditors.—*Baskin v. Calhoun, Adm'r*, Jan. T. 1871; *Cook et al. v. Dyer*, 3 Ala. 643.   If, then, the mortgagor chooses to secure a debt bearing usurious interest in the same conveyance with another bearing only simple and legal interest, it is his right to do so.   And if, upon a sale of the mortgaged property, he consents to an appropriation of the funds thus raised to the payment of the usury; a surety on the debt paying legal interest cannot complain of it.   The surety gets what was intended for him on the execution of the mortgage, and this is all that he is entitled to.   But the charge of the court which was given, and excepted to by the appellant, was not in conformity with this declaration of principle.   It was therefore erroneous.

The decision of the court below is reversed, and the cause is remanded, and a new trial is ordered in the court below.